FILED

11 MAY -5 PM 3:27

CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

BY: DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BENJAMIN VANFOSSAN, CDCR #F-39330,

Plaintiff,

vs.

SUSAN L. HUBBARD; GEORGE NEOTTI; PATTY COLSTON; WILLIAM SUGLICH; MICHAEL STOUT; G. PEDERSON; BILL BROWN; ALAN KHAN; CLARK; E.EMROY,

Defendants.

Civil No. 10cv1501 W (RBB)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b) [DOC. 22]**

**[ECF No. 22]**

## I.

## PROCEDURAL BACKGROUND

Benjamin Vanfossan ("Plaintiff"), a prisoner currently incarcerated at Ironwood State Prison in Blythe, California, proceeding pro se and *in forma pauperis,* filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 15, 2010. Plaintiff alleges that while he was housed at Richard J. Donovan Correctional Facility from November 1, 2007 through June 17, 2010, his constitutional rights and his rights pursuant to the Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA") were violated.

/ / /

Defendants have filed a Motion to Dismiss pursuant to FED.R.CIV.P. 12(b) and 12(b)(6). Plaintiff has filed an Opposition to which Defendants have filed a Reply. [ECF Nos. 40, 42]. The Court has determined that Defendants' Motion is suitable for disposition upon the papers without oral argument and that no Report and Recommendation from Magistrate Judge Ruben B. Brooks is necessary. *See* S.D. CAL. CIVLR 7.1(d)(1), 72.3(e).

**II.**

**DISMISSAL OF PLAINTFFS**

Throughout Defendants' Motion, they seek dismissal of claims against them brought by the other Plaintiffs listed in Plaintiff's Complaint. As the Court previously informed Plaintiff Vanfossan because he is proceeding pro se, he has no authority to represent the legal interest of any other party. *See* Aug. 11, 2010 Order at 3 (citing *Cato v. United States*, 70 F.3d 1103, 1105 n.1 (9th Cir. 1995); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987); *see also* FED.R.CIV.P. 11(a) ("Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's original name, or if the party is not represented by an attorney, shall be signed by the party.")). Thus, to make the record clear, the Court dismisses all Plaintiffs, with the exception of Plaintiff Vanfossan, from this action. However, the Court rejects Defendants request for the Court to reach the merits of the claims by the other Plaintiffs as those claims are not properly before this Court.

**II.**

**PLAINTIFF'S FACTUAL ALLEGATIONS**

Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD") from November 1, 2006 through June 17, 2010. (*See* Compl. at 1, 12.) Plaintiff is an "adherent of the Odinist Religious Faith Group of the Native Northern European Peoples." (*Id.* at 12.) Plaintiff attended Odinist services at RJD beginning in November of 2007. (*Id.* at 12-13.) Defendant Alan Khan, a Muslim Chaplin, was the designated "staff sponsor" for the Odinists. (*Id.* at 13.) Prison officials would not permit the Odinists to use a "mead horn" during their worship due to safety concerns and would not permit them to use incense. (*Id.*) Prison officials claimed that there was a safety issue with allowing inmates to use fire or burn items. (*Id.*)

On May 5, 2008, Defendant Khan distributed a list of "Approved Religious Vendors" to the "religious community" but there was no approved vendor for the Odinists. (*Id.* at 15.) From January to July of 2008, Plaintiff alleges that the "Odinist Services on Facility 3 experienced numerous cancellations." (*Id.* at 16.) Plaintiff further alleges that while their services were disrupted, no other religious organizations were disrupted. (*Id.* at 17.) On September 25, 2008, Plaintiff alleges that the locker in the chapel where they housed their religious items had been "ransacked." (*Id.* at 18.)

Plaintiff went to Defendant Khan to request an implementation of a more "Traditional Odinist Program" but Khan rejected this request. (*Id.*) Further, the Warden sent Defendant Khan a letter denying the request for "Odinist's Inmate ministers." (*Id.* at 19.) Plaintiff informed prison officials that the Odinist services were being delayed by the watch tower officer whom Plaintiff claims told the Odinist inmates "you guys aren't going to that white racist meeting." (*Id.* at 20.)

In March of 2009, Plaintiff submitted a request to hold services outside and to establish an "Odinist only sacred grounds." (*Id.*) These requests were denied and Defendant Khan continued to fail to be present at the services which caused them to be cancelled. (*Id.* at 21-22.) Plaintiff then learned that Odinist inmates were "under investigation" for "holding court, pressuring inmate not to attend Odinist services, and holding racists political rallies in the chapel." (*Id.* at 23.) Plaintiff met again with Defendant Khan whom he claims told Plaintiff that he could "get [his] services back" if he stopped filing grievances. (*Id.* at 24.) Plaintiff alleges from July of 2009 to September of 2009, the Odinist services continued to be cancelled and Odinists inmates were retaliated against by having their religious items confiscated. (*Id.* at 29.)

Plaintiff then met with Defendant Patty Colston, Community Partnership Manager, who informed Plaintiff that the Odinists would be able to jointly use a plot of land with other religious groups for their services. (*Id.* at 29-30.) However, Plaintiff informed Defendant Colston that Odinists required their "own sacred grounds to be able to properly follow its traditional Religious practices." (*Id.* at 30.) The request for their own plot of land was denied. (*Id.*)

Plaintiff filed more grievances and in November of 2009, Defendant Khan notified the Warden that he would no longer be the sponsor for the Odinists. (*Id.* at 33.) On January 18, 2010, Plaintiff sent a memorandum to the Warden and Facility 3 Captain "proposing and outlining the general and specific requirements for religious accommodation for inmate adherents of the Asatru/Odinist faith at this institution." (*Id.* at 35.) Plaintiff alleges that "this proposal received no reply while Odinist Services continued to be denied." (*Id.* at 36.)

## III.

## DEFENDANTS' MOTION TO DISMISS

### DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)

The Court will first consider Defendants' arguments that Plaintiff's Complaint should be dismissed for failing to exhaust available administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a).

### A. Standard of Review per FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a)

Defendants claim Plaintiff failed to exhaust available administrative remedies pursuant to 42 U.S.C. § 1997e(a) before bringing this suit, therefore, they seek dismissal under the "non-enumerated" provisions of FED.R.CIV.P. 12(b). The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter of abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss, including a non-enumerated motion under FED.R.CIV.P. 12(b). *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). It is also well established that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant prison officials have the burden of raising and proving. *See Jones v. Bock,* 594 U.S. 199, 216 (2007); *Wyatt*, 315 F.3d at 1119. However, unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, F.3d at 1120.

### B. Exhaustion of Administrative Remedies per 42 U.S.C. § 1997e(a)

The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a

prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). 42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case, *id.* at 525-26, and to encompass inmate suits about both general circumstances and particular episodes of prison life--including incidents of alleged excessive force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (finding that prisoner's civil rights action must be dismissed without prejudice unless prisoner exhausted available administrative remedies *before* he filed suit, even if he fully exhausts while the suit is pending).

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS., tit. 15 § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing CAL. CODE REGS. tit. 15 § 3084.5).

**C. Application of 42 U.S.C. § 1997e(a) to Plaintiff's Case**

Defendants argue that Plaintiff failed to exhaust his administrative remedies *prior* to filing this lawsuit. In support of their claim, Defendants provide several declarations including the Declaration of Defendant A. Khan, RJD Muslim Chaplain and Sponsor for Odinist inmates. (*See* Defs.' Mot, Khan Decl. at ¶ 3.) In this Declaration, Defendant Khan attaches three separate administrative grievances filed by Plaintiff pertaining to his religious claims. (*Id.*) Plaintiff filed an administrative grievance on March 16, 2009 in which he requested that certain inmates be

designated as Odinist ministers. (*See* Khan Decl., Ex. A, Inmate Parolee Appeal form stamped "received" March 16, 2009.) This grievance does not have a log number and in the "informal level" section Plaintiff has written "I am withdrawing this appeal." (*Id.*)

In the second administrative grievance provided by Defendant Khan, Plaintiff is seeking more accommodations to the Odinist schedule and requests that Defendant Khan, as the Odinist minister be "physically present" during the times they want to be in the chapel. (*Id.*, Ex. B, Inmate Parolee Appeal form stamped "received" April 20, 2009.) Once again, there is no log number and Plaintiff has written "I withdraw this appeal." (*Id.*) The third administrative grievance provided by Defendant Khan indicates that Plaintiff is claiming that the Odinists have been denied the same privileges that other religious groups are receiving. (*Id.*, Ex. C, Inmate Parolee Appeal form dated by Defendant Khan on May 4, 2009.) This request was denied. (*Id.*)

Defendants then provide the Declaration of E. Franklin, Correctional Counsel III at RJD who initially received the above referenced grievances. (*See* Franklin Decl. at ¶ 10.) Franklin declares that the "RJD Inmate/Parolee Appeals Tracking System" indicates that these grievances were "screened out" or rejected. (*Id.*) Franklin recalls that he "screened out two of these appeals, which did concern religious practices, in March and April 2009, because Vanfossan submitted them without making an attempt to resolve them informally at first." (*Id.* at ¶11.) Franklin further states that Plaintiff "did not submit any of this religious appeals to this office for formal review after they were reviewed informally." (*Id.* at ¶ 12.)

In response, Plaintiff argues that Defendants fail to address the group administrative appeal that he filed in February 2010 and is attached to his Complaint as Exhibit "14." The Court takes notice of Plaintiff's Exhibit 14 which is an administrative grievance dated February 18, 2010. However, the Court then notes Plaintiff's Exhibit 15 which is a copy of the "screen out" rejecting his February 18, 2010 grievance for failing to "attempt to resolve the problem at the Informal Level." (Pl.'s Compl., Ex. 15, Response to administrative grievance by Appeals Coordinator dated February 24, 2010.)

///

///

The Supreme Court has made clear that Plaintiff must "properly exhaust" his administrative remedies before filing a prison conditions action. In *Woodford v. Ngo*, 548 U.S. 81, 91 (2006), the Supreme Court held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 91. The Court further held that "[proper exhaustion] means ... a prisoner must complete the administrative review process in accordance with the applicable procedural rules ... as a precondition to bring suit in federal court." *Id.*

Plaintiff has failed to rebut Defendants' showing that he failed to properly exhaust his administrative grievances prior to bringing this action. Thus, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint for failing to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). This dismissal is without prejudice to permit Plaintiff to file a separate action once he has properly exhausted his administrative remedies. The Court will not address the remainder of Defendants' Motion as dismissal of the entire action without prejudice is warranted at this time.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. 22] for failure to exhaust his administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a). This dismissal is without prejudice.

In light of the foregoing, all remaining pending motions [Docs. 31, 33] are terminated, and the Clerk of Court shall close the District Court file.

**IT IS SO ORDERED.**

DATED: 5/5/11

HON. THOMAS J. WHELAN
United States District Judge